O’NIELL, O. X
 

 (dissenting). The Act 76 of' 1910 was intended to be, and was in fact, a local or special law, applicable to the city of New Orleans only. The statute was not an amendment of the city charter, but an independent statute. If it was, as the majority of the members of the court think, an amendment, or a part, of the city charter, it was superseded and repealed by the re-enactment of the city charter, by the Act 159 of 1912, p. 253; for the provisions of the Act 76 of 1910 were not retained or embodied in the Act 159 of 1912, which is now the city charter. The eighth paragraph of the eighth section of the act of 1912 (page 265), relating to walls of buildings, merely authorizes the commission council “to regulate the safety, height and thickness of the walls and structures.” The repealing clause of the act contains a proviso, declaring that all of the provisions of eight specified acts, including three acts of 1910, “not repugnant to or inconsistent with the terms of this act, are continued in full force and effect, and the commission council herein organized and provided for is especially authorized and vested with all the powers, duties, functions and privileges granted and provided for under the terms and provisions of the aforesaid acts.” The Act 76 of 1910 is not mentioned as one of the acts of 1910 that were “continued in full force and effect,” etc. Therefore, if the Act 76 of 1910 was an amendment of the city charter, it went .out of existence when the city charter was re-enacted, without retaining the provisions of the Act 76 of 1910, by the Act 159 of 1912.
 

 The ruling that the Act 76 of 1910 is not unconstitutional cannot rest upon the theory that the act stands as an amendment of the city charter. The theory would be unsound even if the city charter had not been re-enacted after the passage of the act 76 of 1910. Every local or special law purporting to confer some special power upon the governing authority of a particular municipality is, in
 
 *577
 
 a sense, am. amendment of the municipal charter.. That is the very kind of local or special laws that the Constitution absolutely forbids the Legislature to enact with regard to municipal corporations having a population less than 2,500, and permits the Legislature to enact with regard to “municipal corporations having a population not less than twenty-five hundred inhabitants,” only on condition that notice, stating “the substance of the contemplated law,” shall have been published for 30 days in the locality to be affected, and on condition that evidence of such publication shall be exhibited in the Legislature before the act is passed, and be recited in the act.
 

 The question of constitutionality of the Act 76 of 1910 must be tested by the Constitution of 1898, the provisions of which, so far as they are pertinent, are retained in the Constitution of 1921. Article 48 of the Constitution of 1S98, the provisions of which are retained as section 4 of article 4 of the Constitution of 1921, forbade the Legislature to enact any local or special law on any of the several “specified subjects” enumerated. Among the subjects enumerated in the list is:
 

 “Creating corporations, or amending renewing, extending or explaining the charters thereof; provided, this shall not apply to municipal corporations having a population of not less than twenty-five hundred inhabitants.”
 

 The prohibition, therefore, is applicable only to private corporations and to municipal corporations having less than 2,500 inhabitants. As to them, the Legislature is absolutely forbidden to enact any local or special law creating such a corporation, or amending, renewing, extending or explaining the charter of such a corporation. But, as to muncipalities having a population not less than 2,500, the Legislature was not forbidden by the Constitution of 1921 to enact any local or special law, creating such a corporation or amending, renewing, extending or explaining the charter of such a corporation, provided, of course, the requirements of the Constitution for enacting local or special laws should be complied with. Those requirements were prescribed by article 50 of the Constitution of 1S98, and are retained as section 6 of article 4 of the Constitution of 1921. The requirements are that—
 

 “No local or special law shall be passed on any subject not enumerated in section 4 of this article, unless notice of the intention to apply therefor shall have been published * * * in the locality * * * which notice shall state the substance of the contemplated law, and shall be published at least thirty days,” etc.
 

 And the evidence thereof shall be exhibited in the Legislature before the act is passed; and every such act shall contain a recital that such notice was given.- It is conceded that no such notice was given with regard to the Act 76 of 1910, and no such recital appears in the act. The act, therefore, being a local or special law — even if it was, in effect, an amendment of the charter of a municipal corporation having a population exceeding 2,500 — was passed in violation of the prohibitory terms of article 50 of the Constitution of 1898 (section 6 of article 4 of the present Constitution). The language is:
 

 “No local or special law shall be passed on any subject not enumerated in article 48 of this Constitution, unless notice of the intention,” etc.
 

 That is the same as to say:
 

 “No local or special law shall be passed on any subject
 
 not forlidden ly article
 
 48, unless notice of the intention,” etc.
 

 The idea that was intended to be expressed —and that was expressed as plainly as any language could express it — -was that no local or special law should be passed-at all on any of the subjects enumerated in article 48, and that no local or special law should be passed on any subject not under the ban of article 48, unless notice of the intention to pass the law was published, etc. In State ex
 
 *579
 
 rel. Fortier v. Capdevielle, 104 La. 561, 29 So. 215, cited in the majority opinion, it was held that, inasmuch as “municipal corporations having a population of not less than twenty-five hundred inhabitants” were expressly excepted from the ban of article 48 of the Constitution of 1898, therefore they were “enumerated” in article 48. But, when the Constitution says, in article 50, that the Legislature may, on complying with the specified requirements, enact local laws on any subject “not enumerated in article 48,” it means on any subject not
 
 included in,
 
 or not under the ban of, article 48. When the court said that article 50 of the Constitution did not apply to an amendment of the charter of a municipal corporation having a population not less than 2,500 because such municipal corporations, being expressly excepted from the ban of. article 48, were thereby “enumerated” in article 48, the court simply took away the meaning and authority of the words, and committed an error which is so palpable that it ought to be corrected, not repeated. The decision was cited in Mulhaupt v. City of Shreveport, 126 La. 780, 52 So. 1023, hut in almost apologetic terms, and without any attempt to sustain it with any reason. The only question that was decided, or that was submitted for decision, in State v. Landry, 139 La. 451, 71 So. 763, was whether section 60 of the Act 14 of 1914, being the section which abolished the charter and took in the territory of the village of Richardson-town, in the act incorporating the city of Bogalusa, was unconstitutional, because it was a local or special law and was enacted without previous publication of the notice required by article 50 of the Constitution of 1898. It was not disputed and appears to„ have been erroneously taken for granted in the majority opinion rendered in the case, that the statute was valid, in so far as it incorporated the city of Bogalusa, and, in fact, in all respects except in so far as section 60 revoked the charter of the village of Richardsontown. The ruling in the case was that the effect of section 60 of the act, abolishing the charter of the village of Richardsontown, was a mere incident of the act incorporating the city of Bogalusa, and was therefore not amenable — as an independent local or special law would be — to the restrictions contained in article 50 of the Constitution of 1S98. I wrote a dissenting opinion in the case (139 La. 451, 71 So. 764), which Chief Justice Monroe concurred in.
 

 The act 76 of 1910 does not, in terms, empower the commission council of New Orleans to repeal article 696 of the Civil Code, within the territorial limits of the city. The act purports merely to authorize the commission council “to adopt ordinances with the proper penalty for their violation thereto attached, providing for or relating to the construction, equipment, alteration, repair and removal of buildings, structures, walls and party walls.” It is true that the second section of the act declares “that such ordinances shall prevail over and supersede any existing laws on the statute books;” but, in so far as that language may be construed as authorizing the commission council of New Orleans to repeal or abolish article 696 of the Civil Code as far as party walls in New Orleans are concerned, the statute is a local or special law, which is unconstitutional because it was enacted in violation of the terms and conditions of article 50 of the Constitution of 1898.