BREAUX, C. J.
This is an action brought ■to have declared null a resolution of the council, the proclamation of the mayor calling an election, the promulgation of the election, and the election.
The election .was held on the 1st day of September, 1908.
The petitioners represent that they are citizens and taxpayers in the territory annexed to the city of Shreveport, having been brought therein by the election, which they contend is null on a number of counts in their petition.
Inter alia that Act No. 309 of 1908, under which the emotion was held, is null and void, as it is a special law and was not published as directed by article 50 of the Constitution; also article 49 of that instrument; that by the terms a repeal of Act No. 105 of 1892 had been effected; that the city of Shreveport went beyond its jurisdiction entirely in ordering an election outside of its territorial limits.
Judgment was rendered against plaintiffs.
Third persons — i. e., taxpayers other than plaintiffs, alleging that they are aggrieved— presented a petition in open court for an appeal, and produced affidavits in support of, the petition.
No objection was raised; an appeal was granted.
Motion to Dismiss the Appeal.
Plaintiffs and appellants deny that appellants Fisher and others have any interest in the appeal, and urge that the ex parte affidavits filed by them are not sufficient to prove interest.
Plaintiffs who move to dismiss the appeal, and the intervener, whose appeal plaintiffs move to dismiss, cannot have any very great conflicting interest. They are all taxpayers complaining of the election held.
In appellant’s petition of appeal, they adopt the averment of plaintiff’s petition attacking the legality and constitutionality of Act No. 309 of the General Assembly of the session of 1908 and. the action of the mayor and city council of the city of Shreveport in holding an election.
They reiterate substantially every allegation of plaintiffs in regard to the election; they are in matter of this, not in all respects, opponents to annexation.
We do not find the least difference. They aver that plaintiffs, having failed after considerable delay to take an appeal, they deem it to their interest to take and prosecute an appeal.
If there is any difference In the position of appellants and plaintiffs, it is not made evident by anything in the record.
Plaintiffs are unwilling to accept the appellants as allies, contending that they (plain *783 tiffs) represent tlie taxpayers, and that there is no warranty for interference by appellees in their suit.
They do to some extent represent taxpayers in settling the law of the eases. It is not a representation which excludes others from taking part in opposing an election, particularly when they join in all that has been alleged as a ground of nullity.
Appellants are third persons and have a right of appeal.
As Relates to the Affidavits.
The correctness of the judgment appealed from is to be tested by the facts pleaded and the evidence; no new issue can be interjected into the cause on this appeal.
The following is sustained by a number of decisions. The grievance complained of may be established by affidavit. There was no objection made in the district court when the appeal was granted or at any time thereafter. Garland’s Code of Practice, p. 671, No. 1, note C.
The motion to dismiss is overruled.
The necessity vel non of publishing notice of intention of applying for the enactment of an act such as No. 309 of 1908, it being a local or special act, is the next point.
That the extension of the city limits changes the Caddo parish lines is another ground.
The next ground is that the city had no authority to order an election beyond its limits.
That tiie city had no authority to change the polling places established by the police jury to other places of her own selection.
That the question should have been submitted to, the qualified voters of the proposed extension, and not to the voters of the whole city, including those in the extension proposed.
That the city authorities paid no attention to the registration laws; dispensed with them altogether. There was no list of voters at precincts seven and eight.
That women in the proposed extension were denied the right to vote.
That they, plaintiffs and appellants, were deprived the right of representation at the polls.
The different pleas are abbreviated.
Opinion and Judgment.
We take up for decision the first point noted above.
At first blush the limitations of the Constitution, expressed in one of its articles, has an unfavorable bearing on the act of the General Assembly, viz. No. 309 of 1908, under which the election was held. Paragraph 12 of the article is quite prohibitive in its first two lines, but permissive in the lines which follow as a proviso.
The General Assembly is directed not to pass local laws creating corporations or amending or renewing or explaining their charters.
The last part of the article (the proviso) is permissive to the General Assembly, provided that this limitation cannot be made to. apply to municipal corporations with a population of over 2,000 inhabitants.
It has been decided that corporations excepted ’by the proviso are emancipated from the effect of the other article (50) of the Constitution requiring notice before the bill passed can become a law. Portier Case, 104 La. 561, 29 South. 215.
That decision is controlling unless we conclude to set it aside and overrule it, a step we are not inclined to take.
The court held in the cited case, substantially, that the reference in the first part of the paragraph of subdivision 12, art. 48, had an unfettering effect to the extent stated in the opinion.
The question is not free from difficulty in deciding it. We shall leave the decision as it is. It has been accepted as correct for a number of years. It has been acted upon, approvingly cited, and commented upon. It *785 would serve no good ¡purpose to undo that which, has been done, or to recall that which has been said.
We are informed that it would have a disturbing effect on local conditions if we were to declare the statute null, passed, doubtless, on the faith in the decision.
Taxes have been collected, bonds issued, and other acts done that would have to be recalled, and much would have to be done to restore as far as possible the status quo ante electionem.
This applies to all acts to date.
We intend, none the less, to let this serve as a notice that it is advisable in doubtful cases to give the notice required by article 50 of the Constitution. The necessity of letting the Portier Case, cited supra, remain as it is may in time strike others differently.
Having decided the first proposition as we have above, it follows that as to the second now before us, the decision must be similar.
2.The next contention of plaintiffs and intervener is that article 49 of the Constitution prohibits the extension of city limits by the passing of an act amending a general law.
That the general law -upon the subject of extending city limits is Act No. 105 of 1892, and another law is, Act No. 136 of 1898 — a special law which repeals the general law.
That the effect of the act of the General Assembly assailed by plaintiffs and opponents is to amend this general law.
This is a petitio principii in assuming that the general law is repealed or amended by the Special law. It is not repealed nor amended. It remains unaffected on the statute books. The only change is that those desiring to extend city limits, if they are in the majority, may extend them under the general law, or, if, as in this case, a majority of the citizens of Shreveport move to that direction they may avail themselves of the special law in question.
One law — the general law — does not stand in the way of thé other; i. e., one does not conflict with the other.
The decisions upon that subject are very plain.
We will quote from one of the number; as-the quotation is quite pertinent, it will suffice to maintain our view upon the subject:
“A special law granting to corporations a certain privilege or franchise, and which contains no express repealing clause, does not restrict or impair the operation of an existing general law which reserves to the Legislature the power to revoke franchise.”
And in addition, as also pertinent, Welsh v. Gossens, 51 La. Ann. 852, 25 South. 472.
Article 49 and its prohibitive features cannot affect a special law which does not repeal or amend a general law, a purpose which cannot be accomplished, as the general law is entirely beyond the reach of the special law.
3. We will merely state the next point urged by plaintiffs and appellants, viz., that changing the city limits changes the lines of C-addo parish. It is not shown in what respect the lines are changed. The point has no merit.
4. Holding an election beyond the city limits.
That is the objection of plaintiffs and inter-vener, that the city could not hold an election in other territory than its own.
The enabling act authorized it to be held as it was held. The election was not held outside of the city. The voters from the annexed extension had to vote within the limits of the city as designated voting places nearest to the extension. There was no illegality in this and not even, a remote irregularity. There was no question of fraud raised.
As the voters do not have the absolute right to vote at a particular place, it may be changed with legislative sanction.
5. The General Assembly is not prohibited from passing laws unless there is an express *787 ed constitutional inhibition upon the subject. There is here nothing of the kind.
Holding the election on the same day that ■a primary election was held to nominate city ■officers and by the same commissioners.
The day selected has legislative sanction as expressed in the statute.
The commissioners acted for both. It does mot appear that any one was prejudiced in his right, nor does it appear that the commissioners had more to do than they should have had. There is no wrong or error to be corrected. The large majority in favor of the result seems to have been fairly obtained.
7. The registration laws overlooked.
This averment does not appear as sustained by the facts. The charge is general and not sustained. No one complains that he was denied the right to vote, and that his name was not in the registration list furnished to the commissioners.
8. Women excluded from voting.
No woman applied to vote. We will not ■assume that had a woman applied to vote, ■and had stated to the commissioners that she had a right to vote, and had pointed out the law giving her the right, that she would not .have been permitted to vote.
In the absence of proof of a right denied, ■we will not annul an election.
For reasons stated, the judgment is affirmed.
LAND, J., recused.