UNITED STATES of America
v.
Peter FRATELLO, Defendant.

UNITED STATES of America
v.
Americo FRATELLO, Defendant.
Nos. 66 Cr. 356, 66 Cr. 355.

United States District Court
S. D. New York.
May 16, 1968.

Robert M Morgenthau, U. S. Atty., for the Southern District of New York, for the United States; by Frank M. Tuerkheimer, New York City, of counsel.

Segal & Morrison, New York City, for defendants; by Marvin B. Segal, New York City, of counsel.

## OPINION

POLLACK, District Judge.

The defendants have moved, pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure for an order directing documentary disclosure by the government.

The government has cross-moved pursuant to Rule 16(c) of the Federal Rules of Criminal Procedure for an order conditioning its disclosure on disclosure by defendants of those documents which defendants intend to offer at the trial.

On the argument of the motions each side stipulated that the requirements of Rules 16(b) and 16(c) with respect to the materiality and reasonableness of the demanded disclosures have been met. However, except as to two items, the defendants object under the Fifth Amendment to disclosure of any of their evidence. Defendants contend that Rule 16(c) cannot, consistently with that Amendment, require a waiver of the privilege as a condition upon the grant of benefits under Rule 16(b). As an alternative position, defendants appeal to the Court's discretion to deny the contested requests.

Discovery by the prosecution from an accused in a criminal case is a relatively recent development in federal practice. Rule 16(c), promulgated by the Supreme Court under its rule-making power, 18 U.S.C. § 3771, became effective July 1, 1966. Precedent for the rule was contained in the legislation of

several states. See Note 76 H.L.R. 838–9 (1963). Prior to the adoption of the federal rule, several state statutes requiring disclosure by the accused to the prosecution were upheld as constitutional. People v. Shulenberg, 279 App.Div. 1115, 112 N.Y.S.2d 374 (1952); State v. Thayer, 124 Ohio St. 1, 176 N.E. 656, 75 A.L.R. 48 (1931).

In California, the courts had granted discovery by the prosecution in specific instances. Jones v. Superior Court, 58 Cal.2d 56, 22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213 (1962); People v. Lopez, 60 Cal.2d 223, 32 Cal.Rptr. 424, 384 P.2d 16 (1963).

When the Supreme Court prescribed Rule 16(c), a majority at least of the Court tacitly approved the principle that some measure of discovery by the prosecution does not infringe the Fifth Amendment mandate that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself * * *". The Rule says in substance that the Court *may* require the defendant to permit the government to inspect scientific or medical reports, books, tangible papers, documents, and tangible objects which the defendant has or controls, and intends to produce at the trial, providing that the Court finds that the requested disclosure is reasonable and that the data is material to the government's preparation of its case for trial.

Considerable opposition was expressed to the adoption of such a rule and early drafts underwent substantial revision. The impact of the Rule on constitutional guarantees was a source of concern and comment.

In his statement dissenting from the transmittal of the new Rule to Congress, Mr. Justice Douglas noted, *inter alia:*

"The extent to which a Court may compel the defendant to disclose information or evidence pertaining to his case without infringing the privilege against self-incrimination is a source of current controversy among judges,

prosecutors, defense lawyers, and other legal commentators.

" * * * *if* discovery, by itself, of information in the possession of the defendant would violate the privilege against self-incrimination, is it any less a violation if conditioned on the defendant's exercise of the opportunity to discover evidence? May benefits be conditioned on the abandonment of constitutional rights? See, e. g., Sherbert v. Verner, 374 U.S. 398, 403–406, 83 S.Ct. 1790, 10 L.Ed.2d 965." 39 F.R.D. 276, 277–278 (1966).

In the same statement, Mr. Justice Douglas indicated his view that:

"To deny a defendant the opportunity to discovery—an opportunity not withheld from defendants who agree to prosecutorial discovery or from whom discovery is not sought—merely because the defendant chooses to exercise the constitutional right to refrain from self-incrimination arguably imposes a penalty upon the exercise of that fundamental privilege." Id. at 277.

Mr. Justice Black in his dissenting statement to Congress on the transmittal to it of the new Rule, indicated his concern over its sweep:

"I am reasonably certain * * * that the Court's transmittal does not carry with it a decision that the amended rules are all constitutional. * * * And I agree with my Brother Douglas that some of the proposed criminal rules go to the very border line if they do not actually transgress the constitutional right of a defendant not to be compelled to be a witness against himself." Id. at 272.

■ The language of Rule 16(c) plainly evidences that its purpose is not unlimited pre-trial discovery by the prosecution since it explicitly exempts from inspection by the prosecution, "reports, memoranda, or other internal defense documents made by the defendant, or his attorneys or agents in connection

with the investigation or defense of the case, or of statements made by the defendant, or by government or defense witnesses \* \* \* to the defendant, his agents or attorneys".

Accordingly, the real dispute seems to be whether and to what extent a defendant's documents and things other than those expressly safeguarded to him by the rule are also protected before trial against all judge-ordered production.

The advocates of liberal discovery from defendants under Rule 16(c) have invoked in support thereof the tenets of fairness, the "two way street" notion of discovery as applied in civil cases.

It has been urged by the advocates of liberal discovery in answer to constitutional objections that there is no element of testimonial compulsion in Rule 16(c); that *if* the accused desires to obtain material in the government's possession and not available to him in advance of the trial, the Court may require him to submit to similar discovery by the prosecution. Discovery from the government under Rule 16(b) is not a constitutional right, but merely a statutory benefit. That is, the burden placed on the defendant is attached to the exercise of the privilege of discovery, not to the exercise of a constitutional right or privilege. The defendant is not under this view, required to choose between "the rock and the whirlpool". (Garrity v. State of New Jersey, 385 U.S. 493, 496, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) ). Thus, it is argued that there is no constitutional bar to conditioning the benefit of discovery by the defendant, in whom the choice remains to bar discovery altogether. See Jones v. Superior Court, supra.

█ The Supreme Court of the United States has held, however, that an option which exacts a "penalty" upon the exercise of the privilege against self-incrimination violates the Fifth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Griffin v. State of California, 380 U.S.

609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).

"In this context 'penalty' is not restricted to fine or imprisonment. It means, as we said in Griffin v. State of California \* \* \* the imposition of any sanction which makes the assertion of the Fifth Amendment privilege 'costly'. 380 U.S. at 614, 85 S.Ct. 1229." Spevack v. Klein, 385 U.S. 511, at 515, 87 S.Ct. 625, at 628 (1967).

█ To be a violation of the Fifth Amendment, the penalty imposed need not be the forfeiture of a constitutional right.

In *Spevack,* the Court held that an attorney could not be compelled to choose between retaining his license as a member of the bar and the assertion of his privilege against self-incrimination.

In *Griffin,* supra, the Court held that adverse comment at a criminal trial on the defendant's exercise of his privilege not to testify, resulted in an unconstitutional penalty.

In each of the above situations, the consequences *flowing from* (i.e., the burdens attached to) the exercise of a constitutional right invalidated the procedures that provided for such consequences.

█ In the case at bar, refusal of disclosure by the prosecution of documents material to the preparation of the defense solely because the defendant chooses to exercise his Fifth Amendment privilege, would as in *Spevack* and *Griffin* result in a "penalty".

A narrow exception to the principle enunciated in *Spevack* and *Griffin* has been upheld by the New York Court of Appeals in Gardner v. Broderick, 20 N. Y.2d 227, 282 N.Y.S.2d 487, 229 N.E.2d 184 (1967). There a police officer was required, upon the alternative of dismissal from his public employment, to waive his privilege against self-incrimination and to testify before a grand jury investigating corruption in the po-

lice department. Writing for a unanimous Court, Chief Judge Fuld said of the choice offered in such a situation that:

"Although people in public office and on the public payroll may not be compelled to surrender their constitutional privilege against self-incrimination (See Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct 616, supra), they have no constitutional right to remain in office when they refuse to discuss with frankness and candor whether they have faithfully performed their duties."

\* \* \* \* \* \*

" \* \* \* a lawyer, though licensed by the State—like a doctor, barber or chauffeur—is not, as Mr. Justice Fortas pointed out in his concurring opinion in the *Spevack* case, (385 U.S., at p. 520, 87 S.Ct. 625) 'an employee of the State. He does not have the responsibility of an employee to account to the State for his actions'. The petitioner, however, did have such a responsibility and his refusal to carry out that responsibility rendered him subject to removal from his position of public trust and confidence". (20 N.Y.2d at 230–231, 282 N.Y.S.2d at 490, 229 N.E.2d at 186).

The Supreme Court has noted probable jurisdiction of *Gardner* in 390 U.S. 918, 88 S.Ct. 848, 19 L.Ed.2d 978 (1968).\* The decision of the case at bar, however, need not await a final determination in *Gardner*, as there exists no comparable public policy to justify imposition of the condition at issue herein. Discovery from the government in a criminal case does not, in a functional sense require discovery from the defendant. The dangers of disclosing the government's case —perjury or intimidation of witnesses —are not alleviated by forcing the defendant to make discovery, nor are they heightened by his failure to disclose. Only where disclosure by the defendant is required to redress an unfair advantage created by the government's disclosure does the waiver of the privilege relate directly to the benefit bestowed by Rule 16(b), and it is rare that disclosure by the prosecution does more than redress the great advantage which the government initially possesses.

■■ A defendant in a criminal case may take the stand. This is his privilege, to be exercised voluntarily. If he takes the stand, he is subject to cross-examination like any other witness. It could not be argued that this procedure constitutes an improper impingement of his Fifth Amendment right because the defendant's desire to tell his story ("the truth") constitutes "pressure" on him to surrender his privilege of silence. By analogy, it has been argued that if the defendant seeks the benefit of testifying —or obtaining a good part of the government's case—a purely voluntary move on his part—he must be prepared to assume consequences that the law attaches thereto. This analogy seemingly suggests a distinction not covered in Justice Douglas' dissent to the transmittal of the new Rule 16(c). It would of course be unfair to allow the defendant to testify without being cross-examined and in analogous circumstances, as stated in the preceeding paragraph, where the government would be placed at a disadvantage by one-sided discovery, the Rule 16(c) condition might be imposed.

■ It is true that discovery under Rule 16(c) is limited to material as to which the defendant intends, at the trial, to waive his Fifth Amendment privilege; from this it has been urged that no constitutional issue turns on the timing of disclosure. Mr. Justice Traynor, Chief Judge of the California

---

\* Since this opinion was filed, the Supreme Court has reversed Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed. 1082 (June 10, 1968) ruling out the distinction made by the New York Court on the ground that Gardner was a public employee.

Supreme Court, has explained his support for requiring disclosure at an earlier point in the proceedings, as follows:

"Neither the privilege against self-incrimination nor the due process requirements of a fair trial fix the time when the prosecution has presented its evidence at the trial as the only procedural hour at which the defendant can be required to make his decision whether to remain silent or to present his defense. Surely he can be required to make that decision before the trial if he is given discovery of the prosecutor's case before the trial." Roger J. Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y. U.L.Rev. 228, 248–9 (1966).

The divergent view in the California Court was set forth by Mr. Justice Peters in his dissent in the *Jones* case as follows (at p. 883 of 22 Cal.Rptr., at p. 923 of 372 P.2d):

"' * * * an accused has the right to stand mute, clothed in the presumption of innocence, until the prosecution, at the trial, has made out a prima facie case against him.' " [quoting People v. Sawaya, 46 Cal. App.2d 466, 115 P.2d 1001]

* * * * * *

"Compelling the accused to give testimony prior to the establishment of a prima facie case against him is * * * a 'flagrant, shocking and prejudicial invasion of appellant's constitutional rights.' " [quoting People v. Talle, 111 Cal.App.2d 650, 245 P.2d 633]

Mr. Justice Peters interpreted *Jones* as permitting discovery by the prosecution on items relating only to so-called "affirmative defenses" (in *Jones*, impotency), but observed that the division between affirmative defenses and other defenses is far from clear and that the defendant should, in no event, be compelled to make an election with respect to the privilege until the prosecution has committed itself with respect to its prima facie case.

In *Jones*, supra, the disclosure sought by the government was unrelated to the prima facie case against the defendant, and could in no way tend to incriminate him, being required by the government solely for rebuttal purposes. In his article, Mr. Justice Traynor hypothesizes a situation in which the government has already made disclosure of its entire case to the defendant, and the defendant is able intelligently to choose what evidence he will and will not present at the trial.

Whether as Mr. Justice Peters contends, the requirement of premature disclosure violates a defendant's Fifth Amendment right even where (a) the prosecution has made complete prior disclosure and (b) the disclosure sought from the accused is of evidence unrelated to the prosecution's prima facie case, need not be determined herein. In the instant case, the defendant would not be in possession of the government's entire prima facie case before being required to make disclosure; indeed, the government, in support of its cross-motion, alleges that the documents sought from the defendants are required by the government as part of its prima facie case. Neither *Jones*, nor any State Court passing upon the constitutionality of the alibi statutes has been called upon to approve disclosure of the type envisaged by the government herein.

 The right of a defendant in a criminal case to remain silent in the face of accusations against him, even at the discovery stage, seems clear. See Miranda v. State of Arizona, 384 U.S. 436, 458–466, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If, therefore, the items sought from the defendants are of a class of evidence which would ordinarily be privileged from disclosure under the Fifth Amendment, the defendants ought not be required to disclose them prior to the establishment on trial of the government's prima facie case.

Not all evidence obtained from a defendant, however, is privileged under the Fifth Amendment.

The accused has been subject to: blood samples and tests[1]; appearing in line-up[2]; fingerprinting[3]; furnishing specimens of handwriting from the accused;[4] posing in Court for identification purposes;[5] disclosure of records and documents kept by the accused in compliance with state or federal statutes;[6] medical examination of prostitute for venereal disease pursuant to state statute;[7] mental examination of an accused who pleads insanity as a defense;[8] requiring names of witnesses who testify on an impotency defense;[9] disclosure of a letter sent from jail while awaiting trial by one accused of murder, addressed to his wife;[10] laws requiring a driver to stop and identify himself after an accident.[11]

In Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), Mr. Justice Brennan writing for a divided Court stated that:

"The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony', but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." (at p. 764, 86 S.Ct. at p. 1832).

This dichotomy does not seem to explain all of the variants, and the Supreme Court has said,

"although we agree that this distinction is a helpful framework for analysis, we are not to be understood to agree with past applications in all instances". Ibid, p. 764, 86 S.Ct. p. 1832.

The items sought by the government in this case, while not, necessarily, communications of the defendant, are nevertheless privileged under the Fifth Amendment.

As early as 1886, in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746 (1886) the Supreme Court stated that the seizure of a man's private books and papers was obnoxious both to the Fourth and Fifth Amendments:

" * * * we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself." (p. 633, 6 S.Ct. p. 534).

The pivotal issue is one of basic public policy as to how completely pre-trial discovery and inspection in criminal cases should be analogized to that in

1. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1967).

2. Commonwealth v. Johnson, 201 Pa.Super. 448, 193 A.2d 833 (1963), cf. United States v. Wade, 385 U.S. 811, 87 S.Ct. 81, 17 L.Ed.2d 53 (1967).

3. People v. Jones, 112 Cal.App. 68, 296 P. 317, 318-319 (1931).

4. Gilbert v. California, 384 U.S. 985, 86 S.Ct. 1902, 16 L.Ed.2d 1003 (1967).

5. People v. Clark, 18 Cal.2d 449, 116 P.2d 56, 62 (1941).

6. Shapiro v. United States, 335 U.S. 1, 5–36, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); Stillman v. United States, 177 F.2d 607, 617 (9th Cir. 1949); United States v. Willis, 145 F.Supp. 365, 366–367 (M.D. Ga.1955).

7. Ex parte Fowler, 85 Okl.Cr. 64, 184 P. 2d 814, 816–817 (1947).

8. Hunt v. State, 248 Ala. 217, 27 So.2d 186, 190–194 (1946); Clements v. State, 213 Ark. 460, 210 S.W.2d 912, 913 (1948); but cf. State v. Olson, 274 Minn. 225, 143 N.W.2d 69 (Minn.1966); Note, 20 Okl.L.Rev. 195 (1967).

9. Jones v. Superior Court, 58 Cal.2d 56, 22 Cal.Rptr. 879, 372 P.2d 919 (1962); McCain v. Superior Court, 184 Cal.App. 2d 813, 7 Cal.Rptr. 841 (1960).

10. State v. Grove, 65 Wash.2d 525, 398 P. 2d 170 (1965).

11. People v. Rosenheimer, 209 N.Y. 115, 102 N.E. 530, 46 L.R.A.,N.S., 977 (1913).

civil cases. See United States v. Hrubik (D.Alaska) 280 F.Supp. 481 (1968). As the Advisory Committee's Note to Rule 16 states:

"The extent to which pretrial discovery should be permitted in criminal cases is a complex and controversial issue."

The new rule and its various subdivisions,—together with the liberalized bill of particulars rule [Rule 7] and the liberalized subpoena rule [Rule 17]—represent a delicately drafted compromise of the extreme or polarized views on this subject. The draftsmen had canvassed the judiciary, the bar and law school experts. The amendments are relatively new. Judicial experience with their operation is still limited.

Whether the Fifth Amendment should preclude discovery by the prosecution of evidence not sought for the preparation of its prima facie case is a matter to be considered when that case arises. Similarly, the circumstances, if any, under which privileged documents ought to be subjected to reciprocal disclosure in the interests of fairness need not be predicted in this case.

The Supreme Court "has suggested that in some circumstances it may be *a denial of due process* for a defendant to be refused any discovery of his statements to the police." See Clewis v. State of Texas, 386 U.S. 707, 712, n. 8, 87 S.Ct. 1338, 1341, 18 L.Ed.2d 423 (1967) [Emphasis added]. Pre-trial discovery in criminal cases is in a stage of dynamic evolution.

■ Until appellate guidance appears which indicates that, in the absence of special circumstances, the price sought by the prosecution for pre-trial disclosure of its records is not to be treated as an encroachment on the privilege, this Court is not prepared to condition discovery by the defendant under Rule 16(b) on pre-trial disclosure of privileged records in the possession or control of the defendant. In this con-

nection it is noted that Courts usually accept the defendant's view of what records may be self-incriminatory. See In re Kanter, 117 F. 356 (D.C.N.Y. 1902).

■ ■ Apart from the issue of privilege, whether in a particular case the Court should impose the condition of reciprocal pre-trial disclosure upon a defendant rests in the Court's sound discretion. The rule is permissive, not mandatory and the stipulation herein of reasonableness is taken to refer to convenience of production and not fairness to the parties. The Advisory Committee note accompanying Rule 16(c) provides the following guidance for the exercise of discretion:

"While the government normally has resources adequate to secure the information necessary for trial, there are some situations in which mutual disclosure would appear necessary to prevent the defendant from obtaining an unfair advantage. * * * [Where] the defendant is well represented and well-financed, mutual disclosure so far as consistent with the privilege against self-incrimination would seem as appropriate as in civil cases." 8 Moore's Federal Practice, ¶ 16.01[3] (1967).

The extent and fairness of the requested disclosure from the defendants herein is best examined in the context of the charges against them and the background of reasons for the discovery requested from the prosecutor by these defendants.

The indictments before the Court charge violation of 26 U.S.C. § 7206(1) by false statements regarding monies withheld for income taxation from wages; and violation of 26 U.S.C. § 7201 by a false return of the amount of income tax withheld from wages, false statement of the gains or losses from sales or exchanges of property and false statements of Financial Condition and Other Information.

In this case, the defendants are faced with a situation in which they, in effect, are seeking from the government a disclosure of their own documents which have come into the hands of the prosecutor through the former accountant for the defendants who has been cooperating with the government and presumably will be its witness at the trial. The defendants claim that they do not have copies and that their former accountant was in possession of or created the books and records of both their business as well as their personal affairs. It is further claimed that his work papers, copies of documents that he submitted on defendants' behalf or any communications received, are all materials in the government's possession and to which the defendants no longer have access, or for which there are no secondary sources.

The defendants further say that the records of their corporation, the Castwell Foundry, including some personal records of the defendants, were allegedly destroyed by a fire at their plant at Middletown, New York between December 21 and December 23, 1960, a significant period herein.

Finally, the defendants say on the issue of fair reciprocal disclosure that most of the documents that they are now requesting the government to disclose are government forms which the defendants themselves have supplied and which form the basis for the alleged false statements or for the evasion of tax charged in the indictments.

Defendants contend that this background indicates unfairness in requiring a pre-trial election from the defendants at this stage of the prosecution even though the defendants may, at the trial, present the documents which the government wishes them now to disclose. The prosecution, on the other hand, has not demonstrated actual need or other special circumstances for the requested disclosure from the defendants.

█ It is perfectly clear that trial tactics are flexible and may and often do shift from those anticipated in advance of trial. It is also clear that until the prosecution has established its prima facie case, the defendant is not called upon to determine whether to produce documents and material normally privileged. It imposes a price on the exercise of a constitutional right to require a pre-trial decision of the trial tactics which are normally determined by a defense lawyer following the completion of the prima facie case.

It may well be doubted that there is such a need for discovery by prosecutors that our concepts of the rights of the accused should be so fundamentally altered.

The refusal of the defendants to waive their Fifth Amendment privilege would result here in denial of access to material information which the defendants have reasonably requested and may constitute an indirect pressure to waive a privilege.

█ From another viewpoint, if indeed the prosecution possesses material which the defense considers so crucial to its case that it would waive the Fifth Amendment privilege, then perhaps the prosecution is under obligation to disclose such material anyway, without condition. This principle was broadly stated by the Supreme Court in Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963):

> "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (p. 87, 83 S.Ct. p. 1196)

Whether or not the privilege with respect to the documents herein would be violated by imposing the Rule 16(c) condition, this Court, in the exercise of discretion, grants the motion of the defend-

ants under Rule 16(b) and denies the motion of the government, except that defendants will be required under their consent thereto, to disclose in advance of trial the documents covered by items 1 and 2 of the government's requests.

Submit order.